UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| DAVID L. PAINTER, ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No.  11-2133 |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, sued as Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

In 2005, Plaintiff David L. Painter filed an application for disability insurance benefits ("DIB"), alleging a disability onset date of January 1, 2004.  The Social Security Administration denied his application initially on February 7, 2006, and again upon reconsideration on June 7, 2006.  Plaintiff, represented by counsel, appeared before Administrative Law Judge David W. Thompson ("ALJ Thompson") for a hearing on September 30, 2008.  Plaintiff and Vocational Expert James Lanier testified.  On November 7, 2008, ALJ Thompson issued an unfavorable decision.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

In May 2011, Plaintiff filed a Complaint (#1) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the Commissioner's decision to deny DIB, pursuant to 42 U.S.C. § 405(g).  In March 2012, Plaintiff filed Plaintiff's Motion for Summary Judgment (#12).  In June 2012, Defendant filed his Motion for an Order Which Affirms the Commissioner's Decision (#15).  For the reasons discussed below, the Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment **(#12)** be **GRANTED**, and that Defendant's Motion for an Order Which Affirms the Commissioner's Decision **(#15)** be **DENIED**.

## I. Background

Plaintiff suffers primarily from back pain and depression.  He has a high school degree, and his past relevant work includes working as a welder and material handler.  Plaintiff has had

three temporary jobs since his application date. Plaintiff testified that he could not continue two of those jobs because of issues with his temper (R. 28) and the third because of back and leg pain (R. 28).

## 1. Summary of ALJ Thompson's Decision

Applying the SSA's five-step sequential evaluation process for determining whether an individual is disabled, ALJ Thompson determined, at step one, that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Although Plaintiff drove a taxi for two short periods of about two months each in 2007, and drove a shuttle van part-time in 2008 for about four months, those work attempts were unsuccessful and did not constitute "substantial gainful activity." At step two, ALJ Thompson determined that Plaintiff has the following severe impairments: degenerative disc disease and depression. At step three, ALJ Thompson determined that Plaintiff's impairments did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

ALJ Thompson determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except that he is limited to simple, routine tasks, with occasional contact with the public and co-workers. ALJ Thompson also concluded that Plaintiff's subjective complaints were not fully credible, noting that Plaintiff does not take strong codeine or morphine-based analgesics usually prescribed for severe and unremitting pain, that Plaintiff did not report back pain in his initial Disability Report, that usual objective signs of severe pain, such as abnormal weight loss or muscle atrophy, are not indicated in the record, and that Plaintiff's testimony regarding housework was internally inconsistent. Further, ALJ Thompson noted that although Plaintiff testified that he could sit for only 10 or 15 minutes at a time, he sat for 60 minutes in a car to get to the hearing.

At steps four and five, ALJ Thompson relied on vocational expert testimony that Plaintiff could not perform his past relevant work as a welder and material handler, but that work exists in significant numbers in the national economy that Plaintiff could perform, such as light hand presser positions and light hand washer positions in the state of Illinois.

**2. Summary of Plaintiff's Medical Records**

The bulk of Plaintiff's medical records concern Plaintiff's history and present symptoms of back pain and depression. The summary of Plaintiff's medical records presented here is not exhaustive, and is merely meant to highlight factual background most relevant to Plaintiff's arguments discussed below.

On October 21, 2003, Plaintiff's records reported sharp, shooting pain in the left hand, elbow, wrist, and fingers for two years. The physician further noted depression, and diagnosed carpal tunnel syndrome and cubital tunnel syndrome. He prescribed a splint and Ibuprofen. (R. 267-69). On March 1, 2004, a neurologist diagnosed essential tremor, with possible relation to anxiety. (R. 276). He prescribed medication including Inderal. (R. 276). Plaintiff returned to this neurologist on April 8, 2004, and the neurologist continued to diagnose essential tremor. (R. 282). On April 27, 2004, records noted depression and stress. (R. 317). The physician diagnosed depression and prescribed Lexapro. (R. 317). On October 8, 2004, Plaintiff visited a physician regarding back pain. (R. 314). Records further noted depression and chronic tremor. (R. 314). On October 31, 2004, Plaintiff visited the emergency room due to suicidal feelings. (R. 300). The physician diagnosed depression and suicidal ideation, and admitted him to the psychiatric floor. (R. 301).

On March 1, 2005, Dr. Patel evaluated Plaintiff at the request of the state agency. (R. 257-59). The doctor indicated that Painter likely suffered from benign essential tremor. (R. 258). He further diagnosed history of depression with symptoms not controlled, history of carpal tunnel syndrome, and chronic back pain. (R. 259).

On June 19, 2005, Plaintiff visited the emergency room due to right leg swelling for three days and severe leg pain. Among other diagnoses, the physician assessed deep vein thrombosis, history of depression, and history of essential tremor, and admitted Plaintiff to the hospital. (R. 341). An ultrasound confirmed deep vein thrombosis. (R. 344). On January 24, 2006, Plaintiff was evaluated by a psychiatrist, Dr. Montgomery, who diagnosed major depression on Axis I, dependent personality on Axis II, and indicated a Global Assessment of Functioning score ("GAF") of 38. (R. 447-48).

Dr. Cataldo, Painter's treating physician, completed a Medical Source Statement on April 25, 2006. (R. 461-62). Cataldo indicated that Painter should bend, reach, handle and finger only occasionally, and prop up his legs three times per day for 10 minutes, among other limitations. (R. 461-62). Cataldo also stated that Plaintiff should be able to frequently lift 11-25 pounds frequently and 26-50 pounds occasionally. Although brief, the Medical Source Statement notes a diagnosis of lower lumbar degenerative arthritis, resting tremor, and right lower extremity DVT. (R. 462).

In July 2006, Dr. Richardson, another one of Painter's treating physicians, completed a Medical Source Statement that limited Plaintiff to standing and/or walking for a total of 1 hour in an 8-hour workday, up to 10 minutes at a time; sitting for a total of 1 hour in an 8-hour workday, up to 10 minutes at a time; and no pushing or pulling. (R. 463). Dr. Richardson recommended that Plaintiff be limited to lifting five pounds or less occasionally. (R. 463). Dr. Richardson listed "severe degenerative disc disease" and "severe lateral recess stenosis" as clinical findings. (R. 464).

On May 15, 2006, Plaintiff's treating psychiatrist, Dr. Montgomery, completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). (R. 455-56). Dr. Montgomery indicated poor to no ability in three areas of occupational adjustments (relating to co-workers, dealing with the public, and using judgment), and only "fair" ability in the remaining five areas of occupational adjustments (following work rules; interacting with supervisors; dealing with work stresses; functioning independently; and maintaining attention/concentration). (R. 455). Dr. Montgomery also noted only fair ability in performance adjustment and personal-social adjustment. (R. 456).

**3. Summary of Plaintiff's Testimony**

At the hearing before ALJ Thompson, Plaintiff testified that he was 48 years old, married, with no children, (R. 23-24), and that he lived in a mobile home. (R. 24). Plaintiff was in the Army from 1978-1979. (R. 24-25). Plaintiff's highest level of education is a high school degree. (R. 26).

ALJ Thompson inquired about the last time Plaintiff attempted work. Plaintiff testified that he drove a shuttle van for a railroad part-time for roughly four months, until May 1, 2008. (R. 27). Plaintiff testified that the job ended because it became a problem for his back and legs. (R. 28). Plaintiff also testified that he drove a taxi part-time over two periods in 2007, each lasting a couple of months. (R. 28). He testified that he stopped driving the taxi because he had trouble dealing with intoxicated passengers and that he couldn't "keep his mouth shut." (R. 28).

Regarding physical limitations, Plaintiff noted that he cannot bend over because he would lose his balance and fall. (R. 32). He also testified that he could not lift much, stand or sit for more than ten or fifteen minutes, had shakes that prevented him from writing and doing some things with his hands, could not squat, needed a handrail for stairs, and couldn't push or pull. (R. 32-33). He testified that the most he could lift was five pounds, (R. 34), that he could perform "light" repair work around the house, (R. 35), and that he could not put on his shoes and socks by himself. (R. 35).

Regarding mental limitations, Plaintiff testified that he has trouble remembering and concentrating, (R. 32) and that he is easily angered, (R. 32). He testified that he has trouble handling his bills, (R. 41), and that he forgets what he's doing, (R. 42).

Regarding medication, Plaintiff testified that he was on Ibuprofen and Aspirin. (R. 30). He also testified that he had Geodone samples from a doctor's office for depression, and also bought Xanax for irritability and anxiety, although he also testified that "they're not doing as good as they should." (R. 30).

Plaintiff also testified that his wife was receiving disability benefits. (R. 25). The ALJ questioned Plaintiff regarding who does the housework in Plaintiff's marriage. (R. 39). Plaintiff responded that a week might pass before either Plaintiff or his wife felt like doing anything, and that their house was dirty. (R. 40). Plaintiff also testified that he visits his neighbors two to three times each week. (R. 37). He watches three or four hours of television each day, and occasionally reads. (R. 38).

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence.  *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits.  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III.  Discussion

Plaintiff first argues that ALJ Thompson erred by omitting from his RFC determination the physical and mental limitations identified in the medical source statements from Plaintiff's treating physicians, Dr. Cataldo and Dr. Richardson, and his treating psychiatrist, Dr. Montgomery, because substantial evidence in the record supported the physicians' findings.  Second, Plaintiff maintains that, in rejecting these physicians' statements, the ALJ failed to follow SSA regulations regarding the weight ALJs must accord treating physicians' opinions.  Defendant responds that ALJ Thompson's determination was supported by substantial evidence, regardless of the ALJ's failure to consider certain limitations.  Defendant further argues that ALJ Thompson properly did not give significant weight to the opinions of Plaintiff's treating physicians, mostly because those opinions were based on subjective complaints and not on sufficient objective evidence.

**1. Treating Physician Rule**

An ALJ must give "controlling weight" to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).  However, "[a]n ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, or when the treating physician's opinion is internally inconsistent, as long as he minimally

articulates his reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citations, internal quotation marks, and alteration omitted). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *see also Punzio*, 630 F.3d at 710 (noting that the ALJ must give "a sound explanation" for rejecting a treating source's opinion).

Furthermore, although an ALJ need not discuss every piece of evidence, he must confront significant evidence that conflicts with his decision. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). An ALJ must explain why he rejected a piece of significant evidence; otherwise, the Court cannot determine whether the ALJ properly rejected the evidence, or even considered it at all. *See Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001).

### I.     Dr. Cataldo and Dr. Richardson

As noted above, Dr. Cataldo, Painter's treating physician, completed a Medical Source Statement on April 25, 2006. (R. 461-62), indicating that Painter should bend, reach, handle and finger only occasionally, and prop up his legs three times per day for 10 minutes, among other limitations. (R. 461-62). Cataldo also stated that Plaintiff should be able to frequently lift 11-25 pounds frequently and 26-50 pounds occasionally. In July 2006, Dr. Richardson, another one of Painter's treating physicians, completed a Medical Source Statement that limited Plaintiff to standing and/or walking for a total of 1 hour in an 8-hour workday, up to 10 minutes at a time; sitting for a total of 1 hour in an 8-hour workday, up to 10 minutes at a time; and no pushing or pulling. (R. 463). Dr. Richardson recommended that Plaintiff be limited to lifting five pounds or less occasionally. (R. 463). The form used by Dr. Richardson was identical to that used by Dr. Cataldo.

In his analysis of the medical source statements, the ALJ conflated Dr. Cataldo and Dr. Richardson's statements:

> The undersigned also gave limited weight to other medical source statements in the record. Treating physician Dr. Cataldo filed a report in July 2006 stating that the claimant could lift only 5 pounds, stand and walk only one hour per day, and sit only one hour per day. Dr. Cataldo also said the claimant had postural and environmental restrictions. (Exhibit 15F/8-11). These restrictions are not

7

supported by the weight of the record, which generally shows good motion of the spine and no neurological deficits.[1]

(R. 17). Although the ALJ refers to Dr. Cataldo's statement, the ALJ actually cites the limitations identified by Dr. Richardson, not Dr. Cataldo. It appears that the ALJ did not consider the limitations identified in Dr. Cataldo's medical source statement at all, and, to the extent he considered Dr. Richardson's statement, the ALJ did so while believing the statement came from Dr. Cataldo.[2]

The Court cannot find that substantial evidence supports the ALJ's treatment of the doctors' medical source statements. To begin, the ALJ did not consider the limitations found by Dr. Cataldo, which, in and of itself, is error. 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Moreover, the ALJ's application of the factors for determining the weight of a treating physician's opinion would be different for each of Plaintiff's doctors. *See* 20 C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) ("If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."); *accord Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Thus, it is important that the ALJ be aware of which doctor's medical source statement he is evaluating. Accordingly, the Court finds it necessary to remand Plaintiff's case so that the ALJ can consider separately the medical source statements of Dr. Cataldo and Dr. Richardson. Consistent with SSA regulations, the ALJ should

---

[1] The ALJ then added: "For these reasons, Dr. Richardson's conclusory November 2006 statement that the claimant 'is unable to work' is not given controlling weight. (Exhibit 18F/19)." R. 17. The ALJ's reasoning on Dr. Richardson's statement, although correct, *see* 20 C.F.R. § 404.1527(e)(1), is not relevant to the Court's analysis, as Dr. Richardson's statement that Plaintiff cannot work was found in a letter from Dr. Richardson, Exhibit 18F, R. 574, not the medical source statements that Plaintiff asks this Court to consider.

[2] It was certainly easy to confuse the two; the doctors filled out identical forms, and the forms were located back-to-back in the record. R. 461-64.

afford these treating physicians' opinions controlling weight if the ALJ determines the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). If the ALJ does not give the opinions controlling weight, the ALJ should, applying the factors enumerated in § 404.1527(c), identify the weight that these opinions merit.

## II.     Dr. Montgomery

On May 15, 2006, Plaintiff's treating psychiatrist, Dr. Montgomery, completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). (R. 465-66). Dr. Montgomery indicated poor to no ability in three areas of occupational adjustments, and only "fair" ability in the remaining five areas of occupational adjustments. (R. 465). Dr. Montgomery noted only fair ability in all three areas of performance adjustment, and in all four areas of personal-social adjustment. (R. 466).

ALJ Thompson provided the following analysis of Dr. Montgomery's medical source statement:

> Dr. Montgomery wrote a report in May 2006 indicating that the claimant had a "fair" mental capacity for most work-related activities, with "poor or no" ability to relate to the public or co-workers, or use judgment. Dr. Montgomery said these limitations were related to the claimant being "poorly motivated" and "locked in the sick role" (Exhibits 15F/2-3 and 16F). However, the undersigned finds no evidence that the claimant has severe depressive symptoms that would prevent him—should he so choose—from engaging in the concentration and socialization required to perform simpler tasks with limited social contacts, as detailed in this decision. Treating psychiatrist Dr. Montgomery's assessment appears to be overly sympathetic to the claimant; further, Dr. Montgomery questioned in later reports whether the claimant was truly unable to work . . . .

(R. 16). Although ALJ Thompson expressed concern as to whether Dr. Montgomery was too sympathetic to Plaintiff, it does not appear that ALJ Thompson actually rejected Dr. Montgomery's medical source statement. Plaintiff overstates the helpfulness of Dr. Montgomery's findings to his case. Dr. Montgomery did indicate limitations in Plaintiff's mental capacity for work-related activities and ability to relate to the public, but these limitations must be understood in the context of Dr. Montgomery's entire statement—Dr. Montgomery also reported that Plaintiff was "poorly motivated" and "locked in the sick role." The ALJ's

9

conclusion that Plaintiff, if he chose to do so, could "engag[e] in the concentration and socialization required to perform simpler tasks with limited social contacts" is consistent with Dr. Montgomery's findings. Therefore, the Court finds that substantial evidence supports the ALJ's analysis of Dr. Montgomery's medical source statement.

### IV. Summary

Accordingly, this Court recommends that Plaintiff's Motion for Summary Judgment **(#12)** be **GRANTED**, and that Defendant's Motion for an Order Which Affirms the Commissioner's Decision **(#15)** be **DENIED**. The Court recommends that this case be remanded for further proceedings, pursuant to 42 U.S.C. § 405(g), with instructions that the ALJ consider the medical source statements of treating physicians Dr. Cataldo and Dr. Richardson.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 13th day of December, 2012.

                                                s/DAVID G. BERNTHAL
                                        UNITED STATES MAGISTRATE JUDGE